UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHAMAN LAL, | CASE NO. C26-0247-KKE |
| Petitioner(s), | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KRISTI NOEM, et al., | |
| Respondent(s). | |

After Petitioner was arrested and detained by United States Immigration and Customs Enforcement ("ICE") agents, he filed a petition for a writ of habeas corpus under 28 U.SC. § 2241. Dkt. No. 1. His petition argues that his detention is unlawful because it violates his constitutional right to procedural due process. *Id.* at 9. The Government[1] filed its return on February 6, 2026, and the Court finds that no further briefing is necessary to resolve the petition. For the following reasons, the Court will grant the petition and order the immediate release of Petitioner.

I. BACKGROUND

Petitioner is a citizen of India who entered the United States in December 2021, and was thereafter processed for expedited removal proceedings. Dkt. No. 5 ¶¶ 3–4. Petitioner claimed fear of returning to India, and the Government referred him for a credible fear interview with

---

[1] In this order, the Court refers to the federal Respondents—ICE's Acting Seattle Field Office Director Laura Hermosillo, U.S. Department of Homeland Security ("DHS") Secretary Kristi Noem, U.S. Attorney General Pamela Bondi, and ICE's Acting Director Todd Lyons—as "the Government."

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

USCIS. *Id.* ¶ 4. Following a positive credible fear finding, USCIS charged Petitioner with inadmissibility under Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act. *Id.* ¶ 5; Dkt. No. 6-2. In January 2022, Petitioner was released on parole and was required to enroll in and comply with the Alternatives to Detention ("ATD") program. Dkt. No. 5 ¶ 6; Dkt. No. 6-3. Petitioner filed an application for asylum in December 2022. Dkt. No. 5 ¶ 7.

Alleging that Petitioner had missed check-ins in 2024 and 2025 that were required by the ATD program, the Government arrested Petitioner when he arrived at a scheduled ICE check-in on January 14, 2026. Dkt. No. 5 ¶¶ 8, 11; Dkt. No. 6-1. Petitioner was transported that day to the Northwest ICE Processing Center in Tacoma, Washington, where he remains detained. Dkt. No. 5 ¶¶ 12, 15; Dkt. No. 6-6.

On January 22, 2026, Petitioner filed a petition for a writ of habeas corpus requesting immediate release from detention. Dkt. No. 1. For the following reasons, the Court grants the habeas petition.

## II.   ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the

Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.

**A.      Petitioner Has a Protected Interest in His Liberty.**

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). That Petitioner was arrested and remains in custody undoubtedly presents a deprivation of Petitioner's interest in his liberty.

Although the Government's return contends that Petitioner falls within the mandatory detention scheme under 8 U.S.C. § 1225(b) (Dkt. No. 4 at 5–6), Petitioner's status as a person who has been living in this country for more than four years counsels against this expanded view of the Immigration and Nationality Act as amended. *See, e.g.*, *Escobar Salgado v. Mattos*, __ F. Supp. 3d __, 2025 WL 3205356, at *20 (D. Nev. Nov. 17, 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in

the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)).[2] "The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Aquino v. LaRose*, No. 25-cv-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases). The Government's interpretation of § 1225(b) is unpersuasive when the statutory scheme is read as a whole, when this subsection is read in conjunction with its implementing regulations, and when the subsection is read against the backdrop of shifting agency pronouncements. *See, e.g.*, *Llanes Tellez v. Bondi*, No. 25-cv-08982-PCP, 2025 WL 3677937, at *6–8 (N.D. Cal. Dec. 18, 2025).

For these reasons, the Court finds that Petitioner is properly detained under Section 1226(a) rather than Section 1225(b). Furthermore, the Court finds that Petitioner's interest in his liberty is constitutionally protected. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). Accordingly, the first *Mathews* factor favors Petitioner.

---

[2] The Government filed a notice of supplemental authority citing *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026), which supports the Government's position here that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). *See* Dkt. No. 7. With respect to the Fifth Circuit Court of Appeals, this split decision is not binding on this Court, and is inconsistent with this Court's view of the statutory text and relevant Ninth Circuit and Supreme Court authority interpreting it.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 4

**B.    The Risk of Erroneous Deprivation of Liberty is High.**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court agrees with Petitioner that the risk of erroneous deprivation of his liberty interest in the absence of a pre-detention hearing is high.

As described earlier in this order, Petitioner was arrested and detained during a 2026 check-in appointment based on alleged ATD violations dating to 2024 or 2025.  *See* Dkt. No. 5 ¶ 8.  The Government states that ICE revoked Petitioner's order of supervision in light of these violations (Dkt. No. 4 at 1), although it is undisputed that Petitioner did not receive notice or an opportunity to be heard on these alleged violations before the order of supervision was revoked and he was re-detained.

The absence of procedural safeguards leads to a high risk of an erroneous deprivation of Petitioner's liberty.  Accordingly, the Court finds that the second *Mathews* factor favors Petitioner.  *See Doe*, 787 F. Supp. 3d at 1094.

**C.    The Government Interest in Civil Detention Without a Hearing Is Low.**

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing.

The Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would require the expenditure of finite resources (money and time) to provide Petitioner notice and a hearing on alleged ATD violations before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue.  *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

The Government argues that it has a "heightened interest" in detaining noncitizens (Dkt. No. 4 at 8), but that interest is not necessarily threatened if a pre-deprivation hearing is required. That Petitioner's alleged violations occurred months or even years before they were acted upon undermines any suggestion that the Government's interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable.

For these reasons, the Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is minimal: any administrative or financial burdens in providing Petitioner a hearing are far outweighed by the risk of erroneous deprivation of the liberty interest at issue.

The Court's review of the *Mathews* factors indicates that Petitioner's re-detention does not comport with due process.

### III. REMEDY

Having determined that Petitioner's re-detention violates his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."). Furthermore, as

explained in this order, due process requires that Petitioner receive notice and an opportunity to be heard before he may be re-detained for alleged release violations.[3] *See, e.g.*, *Llanes Tellez*, 2025 WL 3677937, at *9 ("If the government wishes to re-detain [Petitioner], it must provide him with the pre-detention hearing before a neutral decisionmaker required by due process."). At any future pre-deprivation hearing, the Government must demonstrate the justification for detention by clear and convincing evidence. *See Doe*, 787 F. Supp. 3d at 1089.

## IV.   CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court ORDERS that Petitioner shall be released from custody no later than February 11, 2026, and may not be re-detained until after a hearing is held (with adequate notice) to determine whether detention is appropriate. The Government shall file a declaration no later than February 12, 2026, documenting Petitioner's release in compliance with this order.

The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition.

Dated this 10th day of February, 2026.

Kymberly K. Evanson
United States District Judge

---

[3] The habeas petition contends that the Government should be required to prove no alternative to detention could mitigate any risk of flight or danger to the community in the event either is demonstrated at a future pre-deprivation hearing. Dkt. No. 1 at 10. The Government disputes the propriety of this request. Dkt. No. 4 at 8–9. While the Court agrees the burden to justify detention remains on the Government, the Petition fails to cite authority in support of the additional requirement regarding alternatives to detention. The Court will thus deny this aspect of Petitioner's requested relief.